UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

EDISON ALEXANDER PEOPLES,

        Plaintiff,                    Case No. 2:14-cv-106

v.                                     Honorable R. Allan Edgar

CATHERINE BAUMAN,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bauman, Sprader, Lesatz, Hood, Taskila, Smith, Immel, O'Dell, Lee, Johnson, Branus, and Hursh. The Court will serve the complaint against Defendants Lindemuth, Rankin, Rondeau, Curtis, Kienitz, Sadak, Tennyson, Wickstrom, Scott, and McDonald.

**Discussion**

   I.   Factual allegations

Plaintiff Edison Alexander Peoples, a state prisoner currently confined at the Alger Correctional Facility (LMF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Catherine Bauman, Deputy Warden Scott Sprader, Deputy Warden Dan Lesatz, Resident Unit Manager T. Lindemuth, Assistant Resident Unit Manager Victoria Hood, Captain Unknown Taskila, Captain Unknown Smith, Captain Unknown Immel, Lieutenant Unknown Hursh, Lieutenant Unknown O'Dell, Sergeant Unknown Lee, Sergeant Unknown Rankin, Sergeant Unknown Rondeau, sft Unknown Kienitz, Sergeant Unknown Johnson, Corrections Officer Unknown Curtis, Corrections Officer Unknown Sadak, Corrections Officer Unknown Tennyson, Corrections Officer Unknown Wickstrom, Corrections Officer Unknown McDonald, Corrections Officer Unknown Branus, Unknown Parties #1-#11, and R.N. Charles D. Scott.

In his complaint, Plaintiff alleges that on May 30, 2011, he was placed in segregation in physical restraints for threatening behavior. On May 31, 2011, Plaintiff's bedding and mattress were removed from his segregation cell for an allegation that his mattress was blocking his cell door. On June 13, 2011, Defendant Curtis and Corrections Officer Boyak arrived at Plaintiff's cell door and ordered Plaintiff to beg if he wanted a mattress. Plaintiff refused and asked to speak to a supervisor. When Plaintiff's request was denied, he stuck his arm through the food slot and again asked to see a superior staff officer. Plaintiff refused to remove his arm from the food slot and Defendant Curtis told him that he was going to make sure that Plaintiff did not have a mattress or any meals.

Later, Defendant Lindemuth arrived at Plaintiff's cell and ordered Defendant Curtis to give Plaintiff a mattress. Once Plaintiff received his mattress, he observed that it was damaged and had several holes in the cover. Corrections Officer Boyak refused to give Plaintiff a meal tray when he was serving meals on the unit. Later, when Corrections Officer Boyak was picking up the meal trays, another prisoner threw a mixture of urine and feces through an open food slot, and much of the waste landed in front of Plaintiff's cell door. Subsequently, large amounts of sewage began flooding the entire wing and seeped into Plaintiff's cell. Defendant Curtis informed Plaintiff that the Emergency Response Team (ERT) was on their way to place Plaintiff in restraints. The ERT, composed of John Doe Defendants #1-#7 ordered Plaintiff to remove his clothing and conducted a visual cavity search. Plaintiff's clothing was then returned to him. Plaintiff was required to sit on the floor with his legs through the food slot in order to have restraints applied. Plaintiff protested because of the sewage on the floor, but complied with the order. Plaintiff was placed in wrist restraints and a belly chain, which was padlocked to his leg irons, securing Plaintiff in a crouched position. Plaintiff was placed in the hallway while his property was removed from his cell. Plaintiff was then walked backward into his cell and was left in restraints for thirty-one and a half hours without bedding or drinkable water. Plaintiff's clothes were covered in raw sewage and he was unable to pull his pants down in order to relieve his bowels or bladder. Plaintiff alleges that during the night, the cell temperature dropped, adding to his discomfort. Plaintiff eventually soiled himself.

Plaintiff alleges that Defendants Rankin, Rondeau, Curtis, Lindemuth, and John Does #8, #9, #10 all observed his condition during this time, but refused to provide him with any relief. During his ordeal, Plaintiff suffered painful muscle spasms, severe migraines, and deterioration of his mental faculties. On June 15, 2011, Plaintiff's restraints were removed without explanation. On

June 16, 2011, Plaintiff's footlocker was unlocked and he was given access to his personal material. In addition, the water in Plaintiff's cell was turned on. Plaintiff's personal clothing was wet and smelled of sewage, so Plaintiff washed them using his personal hygiene products. Plaintiff had to wait several more days before receiving any cleaning supplies or laundry service. Plaintiff was not allowed to exchange his soiled wool blanket for a clean one, nor was he allowed to have it laundered. On June 21, 2011, Defendant Hursh conducted a hearing on a misconduct written by Defendant Curtis for destruction of property, and refused to call any of the witnesses requested by Plaintiff was found guilty and received 30 days loss of privileges. In addition, Plaintiff was ordered to pay $48.33 in restitution. Plaintiff finally received a mattress on June 27, 2011.

On July 21, 2011, Plaintiff's mattress was confiscated because it was allegedly damaged. Plaintiff was given an additional wool blanket as a substitute. Plaintiff states that he was unable to sleep comfortably until August 1, 2011, when his mattress was returned to him. Plaintiff states that on August 8, 2011, Corrections Officer Kurth refused to serve Plaintiff's meal, so Plaintiff barricaded himself in his cell. Defendants Kienitz, Tennyson, Wickstrom, Sadak, McDonald, and John Doe #11 came to Plaintiff's cell in riot gear and ordered Plaintiff to remove the barricade. Plaintiff refused, so they breached the barricade and sprayed a chemical into Plaintiff's cell, striking Plaintiff on the face, chest, and body. Plaintiff surrendered and removed his clothing, as ordered by Defendant Sadak. Plaintiff submitted to a visual cavity search. Plaintiff's exposed skin began to burn as a result of exposure to the chemical agent in his cell. Plaintiff dressed himself as ordered by Defendant Sadak, was placed in restraints, and was removed from his cell. Defendant Scott administered eye drops, which did not ease the burning in Plaintiff's eyes. Plaintiff explained that his clothing was saturated and his skin was burning, and asked to take a shower. Plaintiff was placed

in a new cell, which did not contain a mattress, and was not allowed to shower or remove his restraints.

Plaintiff was left in restraints until August 11, 2011, during which he soiled himself and was unable to clean the chemical agent from his skin. On August 13, 2011, Plaintiff was given a change of clothing. On August 18, 2011, Plaintiff received his personal property and hygiene items, and on August 19, 2011, Plaintiff was finally given a mattress. Plaintiff contends that Defendants Lesatz, Sprader, and Bauman are responsible for insuring that prisoners who are placed on mattress restriction receive an adequate substitute, as well as for staff education and training. In addition, Plaintiff states that Defendants Rankin, Rondeau, Lindemuth, John Does #8, #9 and #10, Lesatz, Sprader, Bauman, Taskila, Smith, Lee, Hursh, Hood, Johnson, Branus, O'Dell, and Immel were aware that staff at LMF regularly used chemical agents and mechanical restraints improperly and excessively as punishment, but failed to address this with additional training.

Plaintiff claims that Defendants' conduct violated his rights under the Eighth and Fourteenth Amendments, as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

-5-

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff's claims against Defendants Bauman, Sprader, Lesatz, Hood, Taskila, Smith, Immel, O'Dell, Lee, Johnson, and Branus are all based on the fact that they were employed in a supervisory capacity at LMF during the pertinent time period. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v.*

*Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932

F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Bauman, Sprader, Lesatz, Hood, Taskila, Smith, Immel, O'Dell, Lee, Johnson, and Branus were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Bauman, Sprader, Lesatz, Hood, Taskila, Smith, Immel, O'Dell, Lee, Johnson, and Branus had in this action involve the denial of administrative grievances or the failure to act. Defendants Bauman, Sprader, Lesatz, Hood, Taskila, Smith, Immel, O'Dell, Lee, Johnson, and Branus cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Bauman, Sprader, Lesatz, Hood, Taskila, Smith, Immel, O'Dell, Lee, Johnson, and Branus are properly dismissed for lack of personal involvement.

Plaintiff sues Defendant Hursh for his conduct as a hearing officer, asserting that Defendant Hursh found him guilty after refusing to call requested witnesses. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that

Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Defendant Hursh is absolutely immune from suit for damages under the circumstances of this case.

Moreover, injunctive relief is not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief against Defendant Hursh is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Plaintiff alleges that the remaining Defendants violated his rights under the Eighth Amendment. The court concludes that Plaintiff's claims that he was left in restraints for days at a time, that he was not allowed to use the bathroom, have fresh drinking water, or wash himself, and that he suffered from extended exposure to chemical agents on his face and chest are nonfrivolous and may not be dismissed on initial review. Therefore, the court will order service of Plaintiff's amended complaint on Defendants Lindemuth, Rankin, Rondeau, Curtis, Kienitz, Sadak, Tennyson, Wickstrom, Scott, and McDonald.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bauman, Sprader, Lesatz, Hood, Taskila, Smith, Immel, O'Dell, Lee, Johnson, Branus, and Hursh will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Lindemuth, Rankin, Rondeau, Curtis, Kienitz, Sadak, Tennyson, Wickstrom, Scott, and McDonald.[1]

An Order consistent with this Opinion will be entered.


Dated:   10/24/2014                              /s/ R. Allan Edgar
                                                R. ALLAN EDGAR
                                                UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff seeks to sue unnamed persons, named as John Does #1-#11. However, the court is unable to serve unnamed persons. Therefore, John Does #1-#11 are not properly parties to this action.