UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDISON PEOPLES,

        Plaintiff,                    Case No. 2:14-CV-106

v.                                          Honorable R. Allan Edgar

CATHERINE BAUMAN, et al.,
        Defendants.
_____/

## OPINION AND ORDER

Plaintiff Edison Peoples, an inmate currently confined by the Michigan Department of Corrections (MDOC), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1, 10. Plaintiff sues the following Defendants: Sergeant Terry Kienitz, Corrections Officer (CO) Michael Sadak, CO David Tennyson, CO Robert Wickstrom, and CO Steven McDonald. ECF No. 10, 45. Plaintiff is seeking declaratory relief and punitive damages.

Plaintiff filed an amended complaint on October 24, 2014, alleging several claims against Defendants. ECF No. 10; PageID.186-189. However, after this Court's order from August 3, 2015 (ECF No. 45), only the following claims remain:

> I. Defendants Kienitz, Sadak, Tennyson, Wickstrom, and McDonald violated Plaintiff's right to be free from cruel and unusual punishment when they left Plaintiff in restraints for a prolonged period of time.
>
> II. Defendants Kienitz, Sadak, Tennyson, Wickstrom, and McDonald violated Plaintiff's right to be free from cruel and unusual punishment when they refused to let Plaintiff wash chemical agents off of his body.

PageID.473. In addition, Plaintiff raised the following claims in his deposition for the first time:

> Defendants denied Plaintiff due process of law under the 6th and Fourteenth Amendments when they deliberately failed to obtain proper approval for the restraints through the administrative process

> and had him placed in restraints for an extended period where he never posed a threat to himself, others or state property, thereby, arbitrarily denying him of his liberty interest.

PageID.701-72, 940.  While Plaintiff classifies these new claims as Sixth and Fourteenth Amendment claims, they appear to fall within the scope of Plaintiff's aforementioned Eighth Amendment claims.  As such, the Court will consider these new claims to be part of Plaintiff's original Eighth Amendments claims.

Defendants filed a motion for summary judgment on February 9, 2016, raising qualified immunity. ECF No. 97.  Plaintiff filed a response in opposition to Defendants' motion for summary judgment on April 12, 2016. ECF No. 116. Defendants did not file a reply. The matter is now ready for a decision.

The following are the events in question viewed in the light most favorable to Plaintiff. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a summary judgment motion are accepted as true)). On August 8, 2011, Plaintiff was informed that he had to move cells, and that if he did not cooperate, a "move team" would come to move him. PageID.693.  Plaintiff did not want to move cells, so he covered his cell window with paper, placed his mattress in front of the door, and "prepar[ed] for combat." PageID.171, 693-694. Shortly thereafter, the "move team" (consisting of Defendants Kienitz, Tennyson, Wickstrom, Sadak, and McDonald), came to Plaintiff's cell door. PageID.171. Defendant Sadak ordered Plaintiff to remove the items from the door, but Plaintiff refused. PageID.171, 694.  Defendants Kienitz, Tennyson, Wickstrom, Sadak, and McDonald then sprayed mace into Plaintiff's cell through the food slot for eight to ten seconds. PageID.171-172, 694.  Plaintiff was standing three

feet from the food slot when this occurred, and the mace struck him in the face, chest, and body. PageID.172, 694. As a result, Plaintiff's eyes, lungs, sinuses, face, and body began to burn, and he had a hard time breathing. PageID.172.

Within a minute after the mace was sprayed, Plaintiff removed the paper and mattress from the cell door. PageID.171, 694-695. Defendant Sadak ordered Plaintiff to remove his clothes so that Defendant Sadak could conduct a visual cavity search of Plaintiff. PageID.172. Plaintiff was then provided his clothes and ordered to dress himself. PageID.172.

Once dressed, Defendant Sadak placed soft restraints on Plaintiff's hands and ankles, which were connected to a belly chain. PageID.172, 696-697. Plaintiff contends that these restraints made it impossible for him to touch his face or lower his pants below his waist. PageID.174.

Plaintiff's door was then opened and two officers grabbed hold of Plaintiff's arms, forcing him to walk backwards outside of the housing unit. PageID.173. A nurse subsequently checked his vitals and placed eye drops in both of Plaintiff's eyes, but Plaintiff claims this did not help the pain. PageID.173, 696-697. Plaintiff told Defendants Kienitz, Sadak, Tennyson, Wickstrom, and McDonald that his body was burning because his clothes were saturated in chemicals, and that he wanted to take a shower. PageID.173. The nurse advised Defendants that Plaintiff could be returned to his cell. PageID.173. Defendants then shortened the length of the chain connecting Plaintiff's stomach to his legs, and took Plaintiff to a new cell with his restraints still on. PageID.173, 698. Plaintiff asked Defendants to take a shower again, but Defendant Kienitz told Plaintiff to shower in his cell. PageID.173, 698.

Due to his limited range of motion from the restraints, Plaintiff could not lie down

or stand for much time without experiencing pain. PageID.174. In addition, Plaintiff urinated and defecated on himself because he could not pull his pants down. PageID.174. Plaintiff's restraints were removed on August 11, 2011. PageID.177, 698. During the days in which Plaintiff remained in restraints, COs (including Defendants Tennyson, Kienitz, and Wickstrom) would check on him approximately every fifteen minutes and someone from healthcare checked on him twice daily. PageID.699-700, 705-723.

After Plaintiff's restraints were taken off, he used his clothes to wipe off a large portion of the chemicals that were left on his body from the mace administered on August 8, 2011. PageID.700. Plaintiff was given a change of clothes on August 13, 2011. PageID.177. On August 18, 2011, Plaintiff was given his personal items (including soap) and then took a shower. PageID.177, 700.

Based on these occurrences, Plaintiff asserts that Defendants violated his constitutional rights. ECF No. 10. Plaintiff seeks legal redress before this Court for these alleged violations.

I.

Presently before the Court is Defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.

*Celotex*, 477 U.S. at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad*, 379 F.3d at 416 (*citing Adams*, 31 F.3d at 382). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Notably, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court could not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

## II.

Both of Plaintiff's claims against Defendants fall under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment's protections are limited to "deprivations of essential food, medical care, or sanitation [or] other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). "Not every unpleasant

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347.

For a prisoner to prevail on an Eighth Amendment claim, the prisoner must exemplify that "he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Evans v. Capello*, No. 2:12-CV-135, 2012 WL 1611227, at *4 (W.D. Mich. May 8, 2012) (quoting *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010)).

**A. Restraints**

Plaintiff's first Eighth Amendment claim against all five Defendants states that his right to be free from cruel and unusual punishment was violated when Defendants kept him in restraints from August 8 through August 11, 2011. PageID.172, 177. While in restraints, Plaintiff indicates that he "was not able to lie down or stand in any position for any period of time without experiencing extremely painful aches and spasms in his back, legs, arms and Achilles tendons," and that after several hours he was "forced to urinate and defecate on himself." PageID.174. Plaintiff claims that it was cruel to leave him in restraints so long because during the time he was in restraints, he "did not display any threatening behavior, did not threaten, attempt or engage in resistance, was not at risk to cause self-injury, was not a physical threat to the [MDOC] staff or to the institutional security of [MDOC] itself, and did not threaten, attempt, or engage in destruction or misuse of state property." PageID.177.

Eighth Amendment claims contain objective and subjective components. *Wilson*

*v. Seiter*, 501 U.S. 294, 298 (1991). "The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him 'the minimal civilized measure of life's necessities.'" *Carson v. Harrington*, 12 Fed. App'x 299, 301 (6th Cir. 2001) (quoting *Rhodes*, 452 U.S. at 347). In claims of excessive force, such as this, "the subjective component requires the plaintiff to show that the defendants acted maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline." *Id.* (quotations and citations omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (noting the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."); *Whitley v. Albers*, 475 U.S. 312 (1986).

In determining whether the use of restraints was done maliciously or sadistically under the subjective component, the court should evaluate the need for the application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Notably, Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996).

Plaintiff's claim fails for several reasons. First, it is clear from the evidence presented that there was a penological justification for the use of restraints from August 8 through August 11, 2011—meaning the restraints were constitutionally permissible. For

example, Plaintiff was placed in full body restraints by Defendant Sadak on August 8, 2011, due to his admittedly non-cooperative transfer (by all five Defendants) to another cell. PageID.172, 693-694 (noting that when he was told he needed to transfer to another cell, he placed paper in his window and pushed his mattress up against the door to "prepare[] for combat" with Defendants).  Under the circumstances, the use of restraints was justified in order to gain control of the situation, and the restraints were not more force than was necessary to restrain Plaintiff. *See Hudson*, 503 U.S. at 7.

Second, the medical records show that Plaintiff did not suffer any injuries as a result of being in restraints for a few days, and that Plaintiff was able to move, walk, eat, and use the bathroom without difficulty, contrary to Plaintiff's allegations.  PageID.705-723 (noting that from August 8 through August 11, 2011, Plaintiff was evaluated twice daily by medical staff, and they noted that Plaintiff had normal movement and coloring in his hands and feet, there was no swelling, and that Plaintiff said he was "doing OK).

Third, even though Plaintiff alleges that he did not attempt to destroy property, escape, or hurt himself or anyone else from the time he was placed in restraints (August 8, 2011) until the time he was taken out of the restraints (August 11, 2011) (PageID.177), restraints may still be justified even when the disruptive behavior had been discontinued.  *See e.g., Payette v. Rondeau*, No. 2:10-CV-204, 2011 WL 3156270, at *7 (W.D. Mich. Jul. 26, 2011) (noting it plaintiff's placement in restraints for seventy-two hours after his outbursts had stopped was permissible); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. 1995) (noting top-of-bed restraints were appropriate even after inmate discontinued his earlier abusive, disruptive, and threatening behavior).

Finally, Plaintiff admitted that he knew Defendants did not have the authority to take him out of the restraints, even if they wanted to do so. PageID.702.  As such, Plaintiff has not presented any evidence that Defendants acted maliciously or sadistically for the sole purpose of causing him harm. *Hudson*, 503 U.S. at 6-7.  Accordingly, the Court finds that Plaintiff cannot show, under the facts he has alleged, that there was a constitutional violation by his placement in restraints during the days in question. Therefore, his first Eighth Amendment claim against Defendant fails.

### B. Chemical Agents

In Plaintiff's second Eighth Amendment claim, he alleges that all five Defendants were deliberately indifferent to his need for medical attention or need to take a shower after being sprayed with chemicals on August 8, 2011.  PageID.187-188, 939.  Specifically, he claims that because Defendants refused to allow him to shower "after his person and his clothing had been doused with a chemical agent," Defendants were deliberately indifferent to the medical harm he faced by continuing to have mace on him. PageID.187-188. Plaintiff indicated that he was sprayed with mace on August 8, and he did not have the opportunity to shower until August 18, 2011. PageID.700. As a result, he claims to have suffered "severe difficulty breathing, intense burning of the eyes, lungs, sinuses, genitals and buttocks, and an overwhelming fear of death for a period of approximately five days following the date that the chemical agent was administered." PageID.174.  Based on this reading of Plaintiff's claim, it is clear that he does not allege that the use of mace violated his rights; but rather, that Defendants' delay in allowing him to shower or otherwise be treated for ten days violated his Eighth Amendment rights.

The Eighth Amendment obligates prison authorities to provide medical care to

incarcerated people, and a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

      A claim, such as this one, for a delay in treatment has an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004) ("Where the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

      The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

With regard to the objective component, Plaintiff has failed to show that his medical need was sufficiently serious. *Farmer*, 511 U.S. at 834.  Plaintiff's alleged injuries appear to be "no more than the normal aftereffects of being exposed to gas and/or chemical agents." *Censke v. Ekdahl*, No. 2:08-CV-283, 2009 WL 1393320, at *6 (W.D. Mich. May 18, 2009). Given that Plaintiff suffered only "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, Plaintiff would have to produce "verifying medical evidence. . . to establish the detrimental effect of the delay in medical treatment," *Napier*, 238 F.3d at 742.  However, the medical evidence provided (by Defendants, not Plaintiff) shows that his reaction to the mace was "normal," and that he did not complain to medical staff (during his twice daily check-ups) about any negative reactions to the mace.  PageID.705-706 (Medical Reports dated 8/8/2011) (stating "Pt is normal risk for chemical agent use," and that "chem[ical] agent was used on pt. Pt eyes rinsed out with eye wash per pt request . . . . no complaints voiced."); PageID.710-716 (Medical Reports dated 8/9/2011) (stating "nurse washed his eyes out," and otherwise appears normal and no complaints relating to chemical agent); PageID.717-721 (Medical Reports dated 8/10/2011) (stating Plaintiff told medical that he was "doing OK" throughout the day).[1] Based on this medical evidence, it is clear that Plaintiff did not suffer any detrimental effects by his alleged ten day delay in taking a shower or otherwise being treated after the mace was administered. Therefore, he has not satisfied the objective component of his Eighth Amendment claim.

Even if Plaintiff had satisfied the objective component of this deliberate indifference claim, he has failed to satisfy the subjective component (that Defendants had a

---

[1] No medical reports were provided beyond August 11, 2011.  PageID.721-723.

sufficiently culpable state of mind when they delayed his medical treatment and shower for ten days). Upon review of the limited medical evidence of record, it is clear that Plaintiff was seen by medical staff twice a day from August 8 through August 11, 2011 (meaning Defendants did not "delay" his ability to be seen by medical staff during the dates in question). PageID.705-723. Moreover, to the extent that Plaintiff claims his delay in taking a shower was due to Defendants' deliberate indifference, this assertion also fails. Plaintiff had a shower in his cell, and he could have used water to rinse off his body if he so chose. PageID.698 (noting that when Plaintiff asked Defendant Kienitz for a shower, Defendant Kienitz said Plaintiff could shower in his cell). Notably, however, in his deposition, Plaintiff stated that water "reactivated" the chemicals on his body and made his pain worse, so it is unclear why he believes taking a shower was his best form of relief. PageID.700.  Regardless, Plaintiff has not demonstrated that any of the five Defendants acted with a culpable state of mind in delaying his medical treatment or ability to shower after the mace was administered. Therefore, his second Eighth Amendment claim against Defendants fails.

    **C. State Law Claims**

In his amended complaint, Plaintiff raised the following state law claims against Defendants:

> I. The actions of Defendants Kienitz, Sadak, Tennyson, Wickstrom, [and] McDonnald [sic] . . . in applying physical restraints on the Plaintiff in a manner that was excessive and unreasonable constituted the tort of battery under the law of the State of Michigan.
>
> II. The actions of Defendants Kienitz, Sadak, Tennyson, Wickstrom, [and] McDonnald [sic] . . . in applying physical restraints on the Plaintiff in a reckless manner constituted the tort of gross negligence under the law of the State of Michigan.

> III. The manner in which Defendants Kienitz, Sadak, Tennyson, Wickstrom, [and] McDonnald [sic] . . . applied physical restraints on the Plaintiff constituted the tort of negligence under the law of the State of Michigan.
>
> IV. The actions of Defendants Kienitz, Sadak, Tennyson, Wickstrom, [and] McDonnald [sic] . . . in recklessly refusing to permit or ensure that Plaintiff was provided a reasonable opportunity to decontaminate after his person and his clothing had been doused with a chemical agent constituted the tort of gross negligence under the law of the State of Michigan.
>
> V. The actions of Defendants Kienitz, Sadak, Tennyson, Wickstrom, [and] McDonnald [sic] . . . in refusing to permit or ensure that the Plaintiff was provided a reasonable opportunity to decontaminate after his person and his clothing had been doused with a chemical agent constituted the tort of negligence under the law of the State of Michigan.

PageID.187-189. Under 28 U.S.C. § 1367(c)(3), the Court may decline supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." Defendants requested that this Court decline to exercise supplemental jurisdiction if this Court dismissed Plaintiff's federal claims. PageID.687. Because this Court has dismissed all of Plaintiff's claims for which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over his state law claims. As a result, Plaintiff's state law claims against Defendants are DISMISSED WITHOUT PREJUDICE.

III.

Overall, despite the Court's obligation to construe handwritten *pro se* documents liberally, Plaintiff's § 1983 fails. Fed. R. Civ. P. 56; *see Estelle*, 429 U.S. at 106; *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (stating that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and will only be dismissed if the claim

undoubtedly contains no facts to support its request for relief). Accordingly, Defendants' Motion for Summary Judgment is appropriate.

In light of the foregoing, this Court concludes that Defendants' Motion for Summary Judgment (ECF No. 97) is **GRANTED** and this case will be dismissed with prejudice in its entirety. To the extent that Plaintiff raised state law claims, these claims are dismissed without prejudice. PageID.187-189. An Order and Judgment consistent with this Opinion will be entered. In addition, Plaintiff's motion for an extension of time to file a response to Defendants' motion for summary judgment (ECF No. 109) is denied as moot.

**SO ORDERED**.

Dated:_5/20/2016____         _/s/ *R. Allan Edgar*_____
                             R. ALLAN EDGAR
                             UNITED STATES DISTRICT JUDGE